**ST. JAMES CAPITAL CORP., et al., Appellants,**

v.

**PALLET RECYCLING ASSOCIATES OF NORTH AMERICA, INC., et al., Respondents,**

**Jeffrey E. Otto, Respondent,**

**Don Matre, et al., Respondents.**

**No. C8–98–1545.**

Court of Appeals of Minnesota.

March 9, 1999.

Timothy D. Kelly, Thomas W. Pahl, Jennifer L. Frisch, Kelly & Berens, P.A., Minneapolis, MN (for appellants)

Geoffrey P. Jarpe, Martha J. Keon, Jeffrey B. Stites, Maun & Simon, P.L.C., St. Paul, MN (for respondents Pallet Recycling Associates of North America, Inc., Robert C. Klas, Reynold P. Flom, William L. Alvey, Thomas S. Schrerier, Kelly O'Neal, and Edward Van)

Mark J. Briol, Briol & Associates, Minneapolis, MN (for respondent Jeffrey E. Otto).

William M. Hart, Mark J. Heley, Meagher & Geer, P.L.L.P., Minneapolis, MN (for respondents James Brill and Don Matre).

Considered and decided by SHORT, Presiding Judge, RANDALL, Judge, and HOLTAN, Judge.*

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

RANDALL, Judge.

Appellants argue that the district court erred when it dismissed their claim for failure to state a claim on which relief may be granted and ruled that directors and officers of an insolvent corporation owe no duty of care to creditors of the corporation. We affirm.

## FACTS

Appellant St. James Capital Corporation (St.James) is an investment company that is in the business of lending temporary working capital to businesses. This allows the borrower the time to place equity or debt securities. This type of loan is commonly known as a bridge loan.

Respondent Pallet Recycling Association of North American, Inc. (PRANA), was a Minnesota company engaged in the business of manufacturing and recycling wooden pallets. It borrowed approximately $2.4 million under a term loan from Norwest Bank Minnesota, N.A. (Norwest). Norwest Credit, Inc., extended another $3.2 million to PRANA under a revolving-credit facility. PRANA retained an investment banking firm to raise capital through the placement of equity or debt securities in order to fund its rapidly expanding national network of pallet-recycling operations.

At the end of 1995, PRANA required additional working capital to fund its operations because it had not completed its placement of the debt/equity securities. In April 1996, St. James, along with other lenders, provided a bridge loan of $1.5 million to PRANA, which was to be repaid with interest on completion of a securities placement or in one year, whichever came first. St. James received 300,000 warrants to purchase PRANA stock and took a secured position behind Norwest and Norwest Credit. During the remainder of 1996, PRANA experienced serious financial problems and by September it ceased all efforts to raise capital through the placement

of debt or equity securities. PRANA was insolvent by the end of 1996.

In early 1997, PalEx, a competitor of PRA-NA, offered to purchase PRANA for approximately $10 million. PalEx's offer was conditioned on the strict confidentiality of the negotiations and the proposed terms. Through its directors, PRANA reached a confidentiality agreement with PalEx and agreed to keep confidential the negotiations and terms of the purchase. On May 11, 1997, PalEx withdrew its offer. The reason was simple. The terms of its offer became public despite PRANA's agreement not to do so. That deal fell through, and PRANA's assets were then liquidated and sold at book value or less within several weeks. PRANA received approximately 10 to 20% of the value PalEx had previously offered to pay for the same assets. Today, PRANA is no longer in business and does not have sufficient assets to repay St. James or other lenders.

St. James and other appellants brought suit against PRANA and its directors on the promissory note. Appellants also brought suit against the respondent directors; alleging that they breached their fiduciary duty and were negligent by failing (1) to complete the public offering of debt or equity securities; (2) to maintain the confidentiality of the PalEx offer, which breach caused the sale to fall through, and the sale falling through caused the nonpayment of the bridge loan; and (3) to maintain the value of certain of the company's assets and to liquidate the company's assets in a commercially reasonable manner.

The district court dismissed Counts II, III, and IV of the complaint pursuant to Minn. R. Civ. P. 12.02(e), ruling that appellants failed to state a claim on which relief can be granted. The district court rejected appellants' claims that respondents had an affirmative duty to complete a public offering or owed a duty to the corporation's creditors not to breach the confidentiality agreement with PalEx. The court also rejected appellants' claim that respondents negligently failed to liquidate the corporation's assets in a commercially reasonable manner, ruling that Minnesota has never adopted the doctrine

that the assets of an insolvent corporation are held in trust for its creditors.

## ISSUE

Does the fiduciary duty of directors and officers of an insolvent corporation to preserve the assets of the corporation for the benefit of the corporation's creditors extend beyond the prohibition against self-dealing or preferential treatment?

## ANALYSIS

 When reviewing an action dismissed for failure to state a claim on which relief may be granted, this court's review is limited to whether the complaint sets forth a legally sufficient claim for relief. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980). A claim will prevail against a motion to dismiss for failure to state a claim on which relief can be granted if it is possible to grant the demanded relief on any evidence that might be produced consistent with complainant's theory. *Northern States Power Co. v. Franklin*, 265 Minn. 391, 395, 122 N.W.2d 26, 29 (1963). All assumptions and inferences must favor the party against whom the dismissal is sought. *Id.* at 396, 122 N.W.2d at 30. When considering questions of law, a reviewing court is not bound by and need not give deference to a district court's determination. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984). Whether a legal duty is owed by a party is a question of law. *Mears Park Holding Corp. v. Morse/Diesel, Inc.*, 427 N.W.2d 281, 285 (Minn.App.1988).

 Appellants argue that the fiduciary duty of an insolvent corporation's directors and officers to preserve and protect the assets of the corporation should extend beyond the prohibition against self-dealing or preferential treatment and that a breach of this duty should give rise to personal liability of the directors and officers. We conclude that the state of the law is against recognizing appellants' cause of action.

Generally,

[w]hen a corporation is insolvent, or on the verge of insolvency, its directors and offi-

cers become fiduciaries of the corporate assets for the benefit of creditors.

*Snyder Elec. Co. v. Fleming,* 305 N.W.2d 863, 869 (Minn.1981) (citations omitted). This is because "[a]s fiduciaries, they cannot by reason of their special position treat themselves to a preference over other creditors." *Id.* (citations omitted); *see also Swanson v. Tomlinson Lumber Mills, Inc.,* 307 Minn. 180, 189, 239 N.W.2d 216, 221 (1976) (holding corporate directors and officers may not secure advantage, even if indirect, over other creditors because of their relation to corporation); *Taylor v. Fanning,* 87 Minn. 52, 53–54, 91 N.W. 269, 270 (1902) (holding corporate directors may not take advantage of fiduciary relation to company, dealing directly with themselves to disadvantage of other creditors). Thus,

> as fiduciaries to the corporation's creditors, the officers and directors of an insolvent corporation cannot approve "a transfer or encumbrance of corporate assets * * *, the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise *similarly secured* interests."

*Association of Mill & Elevator Mut. Ins. Co. v. Barzen Int'l, Inc.,* 553 N.W.2d 446, 451 (Minn.App.1996) (quoting *Snyder,* 305 N.W.2d at 869) (alteration in original), *review denied* (Minn. Nov. 20, 1996). Thus, it appears that the cases appellants cite are fact specific where the directors and officers were alleged to have preferred themselves or treated themselves in some different way than general creditors to the detriment of general creditors. Our facts do not involve allegations of inside dealing by the board and officers to benefit themselves personally as PRANA went under.

Here, Count II of appellants' complaint alleges that PRANA's directors breached their "fiduciary duty by * * * negligently failing to complete a public offering or placement of the company's debt or equity such that * * * [appellants] would have been repaid." Count III alleges that the directors "breached their fiduciary duty by * * * negligently failing to maintain the confidentiality of the PalEx offer to purchase PRANA and

PalEx terminated its lucrative offer." As the district court correctly noted when dismissing these two counts,

> [appellants'] pleadings and arguments seek to impose a general negligence duty of care upon the directors: [appellants] argue that the directors owed an affirmative duty to creditors to complete a public offering, and that the directors owed a duty to the company's creditors to not breach a confidentiality agreement.

■ Appellants cannot point to authority for the proposition that corporate directors or officers have an affirmative duty to complete a proposed public offering or can breach a duty of care by negligently failing to comply with a strict confidentiality agreement surrounding a proposed sale of the corporation. We conclude no such duty of care exists in Minnesota. We decline the invitation to impose that duty. As the district court correctly observed, "To extend the duty of due care to cover Directors in this case would * * * seriously erode the limited liability protection granted by the corporate structure."

■ Appellants' claims, simply put, are criticisms of the subjective business judgment made by PRANA's corporate directors and officers on how best to proceed with the proposed takeover by PalEx, and the placement of debt or equity securities on behalf of PRANA. The complaint does not allege any self-dealing or preferential treatment by PRANA's directors or officers. Under the business judgment rule, we do not "second-guess the business decisions of corporate professionals." *Potter v. Pohlad,* 560 N.W.2d 389, 392 (Minn.App.1997) (citation omitted), *review denied* (Minn. June 11, 1997). The district court did not err in dismissing Counts II and III of appellants' complaint for failure to state a claim on which relief can be granted.

■ Count IV of appellants' complaint alleged that PRANA's directors breached their fiduciary duty by negligently failing to liquidate the assets of the corporation in a commercially reasonable manner. The district court dismissed the count, ruling that Minnesota has never adopted the trust fund

doctrine, which provides that the assets of an insolvent corporation are to be held in trust for the corporation's creditors.

In *Farmers Co-op. Ass'n v. Kotz*, 222 Minn. 153, 157, 23 N.W.2d 576, 579 (1946), the Minnesota Supreme Court held that "[t]he trust fund doctrine has not been adopted in this state." Quoting from an earlier decision, the court held:

> "Corporate property is not held in trust, in any proper sense of the term. * * * Absolute control and power of disposition are inconsistent with the idea of a trust. The capital of a corporation is its property. It has the whole beneficial interest in it, as well as the legal title. It may use the income and profits of it * * * the same as a natural person. It is a trustee for its creditors in the same sense and to the same extent as a natural person, but no further".

*Id.* at 157–58, 23 N.W.2d at 579 (quoting *Hospes v. Northwestern Mfg. & Car Co.*, 48 Minn. 174, 192, 50 N.W. 1117, 1119 (1892)).

■ Creditors are not owed a duty by an insolvent corporation's directors and officers to minimize any loss that may occur as a result of the corporation's insolvency. To hold otherwise would allow creditors of a corporation, solvent or insolvent, to interfere unduly and interject themselves in the day-to-day management of the corporation. While it is axiomatic that creditors have the right to be repaid, it is equally true that they do not have the right, absent an agreement to the contrary, to dictate what course of action the directors and officers of a corporation shall take in managing the company, or as in this case, to direct how the assets of the corporation shall be disposed of to satisfy the debts of the corporation. This case does not present a situation where the corporate directors and officers, once they became aware the corporation was insolvent or on the verge of insolvency, simply "walked away" and did nothing, thereby wasting the corporate assets to the detriment of the corporation's creditors. The directors and officers had no duty to hold the corporate assets in trust for the benefit of PRANA's creditors. The district court did not error when it dismissed Count IV of appellants' complaint for failure to state a claim on which relief can be granted.

We note that appellants' claim is, at best, based on speculation. There is no ironclad guarantee that PRANA could have successfully placed its debt or equity securities or that the sale between PRANA and PalEx would have taken place, even assuming respondents kept the terms of the sale confidential as required by PalEx. Even without the breach of confidentiality, there would still be variables, including negotiations, other issues in the closing, other creditors with claims, and, thus, it is speculation, on this record, to argue that "but for" PRANA's breach of confidentiality, appellants would have received their entire loan paid in full. The facts alleged in appellants' complaint do not warrant an extension of the scope of the director's fiduciary duty to creditors of an insolvent corporation beyond that against director and officer self-dealing or preferential treatment to the detriment of the corporation's other creditors.

■ Finally, appellants argue that they should be allowed to amend their complaint to assert a derivative claim against respondent directors. "A party may amend a pleading by leave of court, 'and leave shall be freely given when justice so requires.'" *Olson v. Moorhead Country Club*, 568 N.W.2d 871, 872 (Minn.App.1997) (quoting Minn. R. Civ. P. 15.01), *review denied* (Minn. Oct. 31, 1997). The district court has broad discretion in deciding "whether to allow an amendment to the complaint, and its decision will not be reversed absent an abuse of discretion." *Id.* (citation omitted).

Here, appellants did not formally move for leave to amend their complaint to assert a derivative claim. They simply requested such leave in their memorandum opposing respondents' motion to dismiss. The district court denied appellants' request, ruling that no motion for leave to amend was properly brought before the court. In addition, the court ruled that even if such a motion had been properly brought before the court, appellants have no grounds for a derivative suit.

The district court properly denied appellants' request for leave to amend their complaint because appellants failed to bring such a motion before the court. In addition, we affirm the conclusion of the district court that, under the facts of this case, there is no basis for a derivative suit by appellants.

## DECISION

It was not error for the district court to dismiss appellants' claim for failure to state a claim on which relief can be granted. The directors and officers of an insolvent corporation do not have an affirmative fiduciary duty to complete a proposed public offering of debt or equity securities on behalf of the corporation nor do they have a duty to adhere to a strict confidentiality agreement regarding a proposed takeover of a corporation.

Absent self-dealings to the detriment of other creditors, the directors and officers of a corporation, once it becomes insolvent, are not transformed into a trust relationship and do not owe a legal duty to liquidate corporate assets in such a way as to minimize losses incurred by the corporation's creditors.

Affirmed.