[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 4, 2012
JOHN LEY
CLERK

_____

No. 11-10579

_____

D. C. Docket No. 1:04-cv-03243-CAP

COREY AIRPORT SERVICES, INC.,

Plaintiff-Appellee,

versus

CLEAR CHANNEL OUTDOOR, INC.,
d.b.a. Clear Channel Airports,

Defendant-Appellant.

_____

No. 11-10580

_____

D. C. Docket No. 1:04-cv-03243-CAP

COREY AIRPORT SERVICES, INC.,

Plaintiff-Appellee,

versus

BARBARA FOUCH,
d.b.a. Creative Media Displays of Georgia,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(June 4, 2012)

Before EDMONDSON, KRAVITCH and FARRIS,[*] Circuit Judges.


PER CURIAM:

This case involves the competitive bidding for an airport advertising concession at Hartsfield-Jackson Atlanta International Airport.

After the completion of the bid process, Plaintiff -- the second-place finisher -- brought this action pursuant to 42 U.S.C. § 1983, alleging a conspiracy to violate Plaintiff's equal protection rights during the bid process. Claims against some defendants were allowed to proceed to a jury which awarded significant compensatory and punitive damages to Plaintiff. We vacate the district court's post-verdict order denying judgment as a matter of law and remand with instructions to grant judgment as a matter of law to the defendants-appellants.

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

BACKGROUND

The events of this case began when the City of Atlanta ("the City") issued a Request for Proposal ("RFP") for a five-year advertising contract at Hartsfield-Jackson Atlanta International Airport ("the airport") in 2002. The lease arrangement envisioned in the RFP involved the winning bidder managing hundreds of advertising displays at one of the world's busiest airports with a guaranteed portion of the revenue being remitted to the City.

Before the 2002 RFP, Defendant Clear Channel Outdoor ("Clear Channel") -- in partnership with Defendant Barbara Fouch ("Fouch") -- held the advertising concession through a month-to-month contract. Fouch had been awarded the contract by the City without entering into a competitive bidding process, and Clear Channel became Fouch's partner by purchasing the ownership interest of Fouch's previous business partner. The existing month-to-month contract guaranteed fifty percent of advertising revenue to the City, but the RFP required bid proponents to commit to paying at least sixty percent of their advertising revenue to the City.

Three companies submitted proposals to the City as part of the bid process; the incumbent team of Clear Channel and Fouch was the top finisher. Plaintiff Corey Airport Services, Inc. ("Corey") finished in second place. After Corey

3

failed to secure the contract, Corey filed an administrative bid protest.[1] This protest was initially denied; Corey appealed the denial, but later abandoned the appeal after obtaining an evidentiary hearing. Corey then filed the present civil action against Clear Channel, Fouch, and certain city employees.

Some of Corey's claims were dismissed at summary judgment, and we -- in an earlier appeal -- ordered that summary judgment be granted on qualified immunity grounds to individual city employees. Corey Airport Servs., Inc. v. Decosta, 587 F.3d 1280, 1281 (11th Cir. 2009). The district court then permitted the section 1983 conspiracy claim against Clear Channel and Fouch (together, "Defendants") to proceed to a jury. Corey's theory of the case was that the City unlawfully treated Clear Channel and Fouch favorably and Corey unfavorably in the bidding process and that the different treatment was based on Clear Channel and Fouch being "political insiders" -- whereas Corey was a "political outsider." Corey also contended that Defendants conspired with the City in support of this deprivation of Corey's supposed equal protection rights.

The jury returned a verdict for Corey on all claims, awarding millions of dollars in damages. Before the verdict, Defendants filed motions for judgment as a

---

[1]For background on the bid protest process, see Atlanta City Code of Ordinances sections 2-1161 and 2-1166.

matter of law. These motions were renewed under Federal Rule of Civil Procedure 50(b) after the jury returned its verdict. Defendants also filed motions for a new trial or a remittitur. The district court denied the post-trial motions.

Defendants raise several issues on appeal. Because we conclude that judgment as a matter of law is demanded and dispositive, we address no other issues raised on appeal.

## DISCUSSION

Underlying Corey's conspiracy claim against Defendants is its assertion that the City violated Corey's equal protection rights by selecting Defendants' bid for the airport advertising contract after conducting a biased bid process. Without an underlying violation of equal protection, no valid conspiracy claim can be shown in this case; and judgment as a matter of law must be granted to Defendants.

## UNDERLYING EQUAL PROTECTION CLAIM

Equal protection jurisprudence is typically concerned with governmental classification and treatment that affects some discrete and identifiable group of

citizens differently from other groups. See, e.g., Engquist v. Or. Dep't of Agric., 128 S. Ct. 2146, 2152 (2008). Defining an "identifiable group" that has been discriminated against is critical to establishing a claim under the Equal Protection Clause. "[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim," Parks v. City of Warner Robins, 43 F.3d 609, 616 (11th Cir. 1995), and the Supreme Court has said that the idea of intention or purpose means that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Pers. Adm'r. of Mass. v. Feeney, 99 S. Ct. 2282, 2296 (1979); see also Bray v. Alexandria Women's Health Clinic, 113 S. Ct. 753, 760-61 (1993) (addressing 42 U.S.C. § 1985 -- about conspiracies to interfere with civil rights -- but noting that both section 1985 and the Equal Protection Clause require "animus based on class" and so require discrimination against members of an identifiable group). Absent the existence of a discrete and identifiable group to which Corey belonged and which the City treated in a discriminatory, prejudicial manner during the bid process, no valid equal protection claim exists in this case.[2]

---

[2]Sometimes, plaintiffs can establish equal protection violations based on a "class of one" theory where the identifiable group that was discriminated against consisted solely of the plaintiff. See, e.g., Village of Willowbrook v. Olech, 120 S. Ct. 1073 (2000). Here, a claim

Throughout the proceedings before the district court and on appeal, Corey offered several proposed definitions for the identifiable group to which it belonged that was targeted by the City. While the proposed definitions differ in their words, Corey chiefly attempts to identify itself as a member of a group of bidders who were not "politically connected" to the City or to influential persons in City government and who were bidders that lost the bid based on this status. See, e.g., Appellee Br. at 32 ("Corey was a member of the readily identifiable group of potential airport advertising proponents who were not sponsored, selected and appointed by Mayor Maynard Jackson."); Pl.'s Resp., Doc. 849:2 ("[T]his record contains substantial evidence demonstrating the class of potential Airport advertising proponents who are not politically connected to Atlanta City officials.")

Corey's proposed group definitions fail to support a claim under the Equal Protection Clause. For a group to qualify properly as identifiable for the purposes of an Equal Protection Clause claim, substantive group characteristics must pop

_____

premised on a "class of one" is unavailable to Corey: the "class of one" theory is not applicable to government decisions like the ones in this case, decisions "which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." Engquist, 128 S. Ct. at 2154. And we have said that "decisions involving government contractors require broad discretion that may rest 'on a wide array of factors that are difficult to articulate and quantify.'" Douglas Asphalt, Co. v. Qore, Inc., 541 F.3d 1269, 1274 (11th Cir. 2008) (quoting Engquist, 128 S. Ct. at 2154).

out that allow us to separate readily entities or people into discrete groupings and clearly identify those persons that suffered the alleged discrimination and those persons that did not. Many substantive characteristics of this kind exist that allow for separation of entities or people into discrete groupings and that could potentially support an Equal Protection Clause claim. Groups based on race, sex, or even longer-term and discrete political affiliation -- Republican as opposed to non-Republican or Democrat as opposed to non-Democrat -- all potentially allow courts to identify clearly the parties involved, separate the parties into strongly defined groupings, and discern the existence of an identifiable group whose members may have suffered discrimination.

Corey does not offer sufficient substantive group characteristics. Instead, Corey attempts to identify groups based on affiliation or connection to the City, the supposed discriminator: "insiders" and "outsiders." This vague category is inadequate because these idea-based characteristics do not allow us to separate readily people and entities into discrete groupings -- a necessary part of identifying the group that suffered the alleged discrimination. The proposed categories are too loose, too shifting to be useful to courts.

No objective criteria plainly fix whether a person or entity is an "insider" or an "outsider." "Insiders" and "outsiders" do not bear immutable characteristics.

8

Furthermore -- unlike with political parties or other longer-term voluntary group affiliations -- they do not even have to declare or register themselves as members of their respective grouping. The most one can hope for in separating persons based on such subjective criteria -- "insiders" and "outsiders" based virtually on friendship with government officials -- would be a spectrum or a fuzzy series of wholly indeterminate and overlapping groups each of which would be inadequate to qualify as identifiable for purposes of an Equal Protection Clause claim.[3]

Stripped of its "insider" and "outsider" labels, Corey's effort at group identification stands solely on this substantive group characteristic: all members lost the airport-advertising bid.  In reality, Corey is defining the class discriminated against as simply the group of individuals allegedly unfairly treated by Defendants: a kind of tautological equating of cause and effect.   This characteristic alone cannot support properly an Equal Protection Clause claim. For a group to qualify properly as identifiable for purposes of a group-based discrimination claim, the group must be identifiable by some common set of traits that reach beyond simply not having been selected for a benefit or sharing a desire

---

[3]Other circuits have expressed similar positions in their discussions of identifiable groups in the context of Bray and section 1985.  See, e.g., Aulson v. Blanchard, 83 F.3d 1, 6 (1st Cir. 1996) (rejecting a class defined by "the lone criterion" of "opposition to the 'politics of the old guard'" as drawing "no readily identifiable line"); Farber v. City of Paterson, 440 F.3d 131, 138 (3d Cir. 2006) (rejecting a class of those "affiliated with" -- or supportive of -- a former mayor as "subjectively defined and 'wholly indeterminate'").

9

to do something which the allegedly discriminating party does not want them to do; the class for a class-based claim for equal protection purposes cannot be defined solely as those persons who suffered at the hands of the supposed discriminator. See Bray, 113 S. Ct. 753, 759 (1993) ("Whatever may be the precise meaning of a 'class,'" the class cannot be defined simply as the group of victims of the protested action).

This notion is especially true in the context of discretionary government activity. Every government-run bid process involves winners and losers: selection of a winner inherently involves a kind of discrimination in itself. If the law allowed groups defined basically as the "bid-losers" to be the basis for an Equal Protection Clause claim, every government bid process -- with winners and losers -- would theoretically support such an equal protection claim.

The letting of municipal contracts ought not regularly be the start of a federal case. Federal courts are not intended to be the constant overlords of government contracts. Governments must have more leeway than that in conducting bid processes for their contracts. See Engquist, 128 S. Ct. at 2154 (equal protection jurisprudence not readily applicable to certain forms of state action that by their nature involve subjective and individualized discretion); Douglas Asphalt, 541 F.3d at 1274 (having "little trouble" in applying Engquist's

10

reasoning to the discretionary decisions governments make about government contractors).

Guided by the reasoning offered in <u>Bray</u>, <u>Engquist</u>, and <u>Douglas Asphalt</u>, we conclude that the law will not allow a group-based Equal Protection Clause claim premised on allegedly discriminatory acts taken in the context of a government bid process to proceed where the sole substantive characteristic shared by those in the supposed group is that they all lost the bid -- even if it is true that the loss was based on subjective and arbitrary factors.

CONCLUSION

Plaintiff's conspiracy claims fail against Defendants because the underlying proposed equal protection claim fails, lacking the sufficient identifiable group required. We therefore conclude that the facts and inferences in this case point overwhelmingly in favor of Defendants and we VACATE the district court's post-verdict order denying judgment as a matter of law and REMAND with instructions that judgment as a matter of law be entered for Defendants.

VACATED and REMANDED.