Lewis A. Remele, Jr., Kate L. Homolka, Bassford Remele P.A., Minneapolis, Minnesota; and Nekima Levy-Pounds, Levy Armstrong, PLLC, Minneapolis, Minnesota; and James R. Swanson (pro hac vice), Fishman Haygood, L.L.P., New Orleans, Louisiana (for appellants)
Keith M. Ellison, Attorney General, Jason Marisam, Assistant Attorney General, St. Paul, Minnesota (for respondents)
Emily R. Bodtke, Aaron D. Van Oort, Faegre Baker Daniels LLP, Minneapolis, Minnesota; and Mahesha P. Subbaraman, Subbaraman PLLC, Minneapolis, Minnesota (for amicus curiae Freedom Foundation of Minnesota)
David M. Aron, Cedrick R. Frazier, Adosh D. Unni, Education Minnesota, St. Paul, Minnesota (for amicus curiae Education Minnesota)
Roger J. Aronson, Minneapolis, Minnesota (for amicus curiae Minnesota Association of Secondary School Principals)
Will Stancil, Minneapolis, Minnesota (for amici curiae Jim Hilbert and Myron Orfield)
Considered and decided by Smith, Tracy M., Presiding Judge; Cleary, Chief Judge; and Florey, Judge.
SMITH, TRACY M., Judge *28 In this appeal, the parents of children enrolled in various Minnesota public schools challenge the district court's dismissal, on multiple grounds, of their action seeking to invalidate portions of Minnesota's continuing-contract and teacher-tenure statutes, Minn. Stat. §§ 122A.40, .41 (2018),[1] as violative of the Education and Equal Protection Clauses of the Minnesota Constitution. The appeal is before this court for a second time, following a remand from the Minnesota Supreme Court. In a September 2017 opinion, this court affirmed dismissal of appellants' amended complaint under the political-question doctrine. The supreme court granted a petition for further review and stayed the appeal pending its consideration of Cruz-Guzman v. State , 916 N.W.2d 1 (Minn. 2018), which also raised a political-question issue in an Education Clause case. After deciding Cruz-Guzman in July 2018, the supreme court vacated this court's previous opinion in this appeal and remanded for this court's reconsideration of the political-question issue in light of Cruz-Guzman and for consideration, as this court deems necessary, of additional issues raised on appeal but not reached by this court in its previous decision. We now conclude that the claims are justiciable and that appellant-parents have standing to raise them, but we also conclude that the amended complaint fails to state viable *29 claims for relief under the Education and Equal Protection Clauses and that the district court did not abuse its discretion by not addressing appellants' request to amend the complaint. We therefore affirm the district court's judgment dismissing the amended complaint.
FACTS
Appellants Tiffini Forslund, Justina Person, Bonnie Dominguez, and Roxanne Draughn each have a child or children enrolled in Minnesota public schools. In their amended complaint, appellants allege that certain provisions of Minnesota's continuing-contract and teacher-tenure laws (together, the challenged statutes) violate their children's rights under the Education and Equal Protection Clauses of the Minnesota Constitution. More specifically, appellants challenge what they characterize as the tenure provisions,[2] the dismissal provisions,[3] and the "Last-In, First-Out," or LIFO, provisions[4] of the challenged statutes. Appellants allege that being taught by effective teachers is essential to receiving an adequate education and that the challenged statutes pose "time-consuming and expensive hurdles" that make it "all but impossible" to dismiss ineffective teachers. They allege that their children have been taught, or are at risk of being taught, by ineffective teachers and that the specter of ineffective teaching burdens their constitutional right to an adequate education under the Education Clause and deprives them of equal protection of the laws under the Equal Protection Clause.
The claims are asserted against respondents the State of Minnesota, the Governor of the State of Minnesota, the Minnesota Department of Education (MDE), and the Commissioner of Education.[5] Respondents moved to dismiss appellants' claims under Minn. R. Civ. P. 12.02. Following briefing and argument, the district court dismissed the amended complaint on three separate grounds: that the claims raised a nonjusticiable political question, that appellants lacked standing to assert the claims, and that the amended complaint failed to state a claim upon which relief can be granted. The district court did not address appellants' request to (again) amend if the existing amended complaint was determined to be insufficient.[6]
This appeal follows.
ISSUES
I. Did the district court err by dismissing the amended complaint under the political-question doctrine?
*30 II. Did the district court err by dismissing the amended complaint based on appellants' lack of standing?
III. Did the district court err by dismissing the amended complaint for failure to state a claim?
IV. Did the district court abuse its discretion by not permitting appellants to further amend their complaint?
ANALYSIS
This appeal is taken from the district court's grant of respondents' motion to dismiss appellants' amended complaint for lack of justiciability and for failure to state a claim upon which relief may be granted. See Minn. R. Civ. P. 12.02(a), (e). We review both types of dismissal de novo. McCaughtry v. City of Red Wing , 808 N.W.2d 331, 337 (Minn. 2011) (justiciability); Bahr v. Capella Univ. , 788 N.W.2d 76, 80 (Minn. 2010) (failure to state a claim); see also Edina Comm. Lutheran Church v. State , 673 N.W.2d 517, 521 (Minn. App. 2004) (considering question of standing de novo, "as an aspect of justiciability").
I. Appellants' claims do not present a nonjusticiable political question.
The first issue before us is whether the district court erred by concluding that appellants' claims are not justiciable because they raise a political question reserved to the legislature. In Cruz-Guzman , the supreme court explained that a political question is " 'a matter which is to be exercised by the people in their primary political capacity,' or a matter that 'has been specifically delegated to some other department or particular officer of the government, with discretionary power to act.' " 916 N.W.2d at 8 (quoting In re McConaughy , 106 Minn. 392, 119 N.W. 408, 417 (1909) ).[7] Applying that definition to the Education Clause claims in Cruz-Guzman , the supreme court reasoned that, "[a]lthough specific determinations of education policy are matters for the Legislature, it does not follow that the judiciary cannot adjudicate whether the Legislature has satisfied its constitutional duty under the Education Clause." Id. at 9. The court further explained that "[p]roviding a remedy for Education Clause violations does not necessarily require the judiciary to exercise the powers of the Legislature." Id. And the court was persuaded that the claims in Cruz-Guzman did not ask the court to interfere with the legislature's policy-making prerogative because the claims essentially
ask the judiciary to answer a yes or no question-whether the Legislature has violated its constitutional duty to provide a general and uniform system of public schools that is thorough and efficient, and ensures a regular method throughout the state, whereby all may be enabled to acquire an education which will fit them to discharge intelligently their duties as citizens of the republic.
Id. (quotations omitted). The supreme court explained that the claims ask the judiciary "to determine whether the Legislature has violated its constitutional duty under the Education Clause" and that the courts "are the appropriate domain for such determinations." Id. Accordingly, the court concluded that the Education Clause claims in Cruz-Guzman were justiciable. Id. at 10. And the supreme court reasoned that the equal-protection claims in Cruz-Guzman were justiciable based on the fundamental *31 right to an adequate education. Id. at 11.[8]
In supplemental briefs filed after remand to this court, the parties dispute whether Cruz-Guzman is dispositive of the justiciability issue in this case. Appellants assert that their claims are indistinguishable from those in Cruz-Guzman because they are merely asking the courts to determine whether the legislature has satisfied its constitutional obligation under the Education and Equal Protection Clauses. Respondents counter that appellants' claims seek policy change and therefore run afoul of the political-question doctrine.
Appellants' claims in this case are distinguishable from those in Cruz-Guzman in several respects. Perhaps most significantly, appellants' request for relief in this case is not limited to a declaration that the legislature has failed to meet its duty under the Education Clause. Appellants' targeting of particular education policies-teacher-tenure, dismissal, and layoff provisions-sets their claims apart from those addressed by the supreme court in Cruz-Guzman . The question is whether this distinction renders appellants' claims nonjusticiable.
Having carefully reviewed the amended complaint and the supreme court's guidance in Cruz-Guzman , we are persuaded that appellants' claims do not raise nonjusticiable political questions. Appellants ask the courts to declare the challenged statutes unconstitutional as violative of the Education and Equal Protection Clauses of the Minnesota Constitution. As the supreme court instructed in Cruz-Guzman , "[i]t is well within the province of the judiciary to adjudicate claims of constitutional violations." 916 N.W.2d at 9 ; see also Marbury v. Madison , 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."), quoted in Cruz-Guzman , 916 N.W.2d at 9. Although the claims here target specific educational policies, it is difficult to discern a difference for justiciability purposes between appellants' challenge to the teacher-tenure, dismissal, and layoff laws and the challenge to the education-finance laws in Skeen v. State , 505 N.W.2d 299 (Minn. 1993). The teacher-tenure, layoff, and dismissal laws and the education-finance laws are both statutory schemes that impact but do not solely control the delivery of education in Minnesota's public schools. And the supreme court in Cruz-Guzman emphasized that, in Skeen and other cases, it "resolved Education Clause claims; [it] did not dismiss these claims as nonjusticiable." 916 N.W.2d at 8. Accordingly, we conclude that the district court erred in dismissing appellants' claims as nonjusticiable under the political-question doctrine.[9]
II. Appellants have standing.
The next issue before us is standing-the "legal requirement that a *32 party have a sufficient stake in a justiciable controversy to seek relief from a court." McCaughtry , 808 N.W.2d at 338 (quotation omitted). A lack of standing bars judicial consideration of claims. Garcia-Mendoza v. 2003 Chevy Tahoe , 852 N.W.2d 659, 663 (Minn. 2014).
In order to have standing, a party challenging the constitutionality of a statute must show "a direct and personal harm resulting from the alleged denial of constitutional rights." City of Minneapolis v. Wurtele , 291 N.W.2d 386, 393 (Minn. 1980). The party must assert an injury in fact-"a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.' " Hanson v. Woolston , 701 N.W.2d 257, 262 (Minn. App. 2005) (quoting Whitmore v. Arkansas , 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (quotation and citation omitted) ), review denied (Minn. Oct. 18, 2005). "Moreover, the injury must be fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." Garcia-Mendoza , 852 N.W.2d at 663.
"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin , 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) ; see also Lujan v. Defs. of Wildlife , 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (quotation omitted) ); cf. Garcia-Mendoza , 852 N.W.2d at 663 (holding that consideration of standing at summary-judgment stage required plaintiff-appellant to show a genuine issue of material fact regarding standing).
Mindful of the procedural posture of this case, we conclude that appellants have made adequate allegations to support the existence of standing. Appellants are parents of children currently enrolled in Minnesota public schools. One of the appellants alleges that her children were taught by ineffective teachers, and all of the appellants allege that their children are at greater risk of being taught by ineffective teachers because of the challenged statutes. In their Education Clause claim, appellants allege that this risk of being taught by inadequate teachers impinges on their children's right to an adequate education. In their Equal Protection Clause claim, appellants allege that some of them are or will be denied a fundamental right by virtue of being taught by ineffective teachers. Appellants allege that declaring the challenged statutes unconstitutional will cure this harm. Appellants thus allege an actual or threatened injury; they allege that the actual or threatened injury is caused by the challenged statutes; and they allege that the injury will be redressed by this court declaring the challenged statutes unconstitutional.
Respondents concede that appellants allege harm resulting from the challenged statutes but challenge the veracity of the allegation, observing that the challenged statutes "expressly provide school districts discretion on teacher personnel decisions." Respondents assert that any harm from being taught by an ineffective teacher is not fairly traceable to them because individual districts make teacher tenure and dismissal decisions. Similarly, respondents assert that appellants cannot meet the redressability requirement of standing because declaring the challenged statutes unconstitutional would not guarantee that *33 individual school districts would never employ an ineffective teacher. But appellants' claims do not challenge individual tenure or dismissal decisions, nor do they rely on individual instances of ineffective teaching. Rather, they assert that the challenged statutes burden their children's education right by making it more difficult for districts to deny tenure and dismiss ineffective teachers. As we note above, when the allegations in the complaint are taken as true, this alleged harm is traceable to the challenged statutes and potentially redressable by declaring the statutes unconstitutional. Whether appellants can prove that the challenged statutes impinge their children's right to an adequate education (and whether such impingement states a viable claim) is more appropriately addressed in connection with the merits. See Warth , 422 U.S. at 500, 95 S.Ct. at 2206 ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal....").
Because appellants' allegations support the existence of standing, we conclude that the district court erred by dismissing appellants' claims for lack of standing.
III. The amended complaint fails to state a claim under the Education Clause or the Equal Protection Clause.
We next address whether the district court erred by dismissing appellants' amended complaint for failure to state a claim upon which relief can be granted. See Minn. R. Civ. P. 12.02(e). "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." Walsh v. U.S. Bank , 851 N.W.2d 598, 603 (Minn. 2014). "We are to consider only those facts alleged in the complaint, accepting those facts as true and must construe all inferences in favor of the nonmoving party...." Hebert v. City of Fifty Lakes , 744 N.W.2d 226, 229 (Minn. 2008) (quotation omitted). We are not bound by legal conclusions in the complaint. Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp. , 850 N.W.2d 682, 692 (Minn. 2014). With these principles in mind, we consider in turn whether appellants have stated viable claims for violations of the Education Clause and Equal Protection Clause of the Minnesota Constitution.
A. Education Clause
The Education Clause of the Minnesota Constitution provides:
The stability of a republican form of government depending mainly upon the intelligence of the people, it is the duty of the legislature to establish a general and uniform system of public schools. The legislature shall make such provisions by taxation or otherwise as will secure a thorough and efficient system of public schools throughout the state.
Minn. Const. art. XIII, § 1. The "object" of the clause "is to ensure a regular method throughout the state, whereby all may be enabled to acquire an education which will fit them to discharge intelligently their duties as citizens of the republic." Cruz-Guzman , 916 N.W.2d at 8 (quoting Bd. of Educ. of Sauk Ctr. v. Moore , 17 Minn. 412, 416 (1871) ). "[T]he Education Clause is the only section of the Minnesota Constitution that imposes an explicit 'duty' on the Legislature." Id. at 9 (citing Skeen , 505 N.W.2d at 313 ). The Education Clause thus creates a positive right-the right to have the government do something-that is distinguishable from the negative rights guaranteed by other provisions of the United States and Minnesota Constitutions-the rights to have the government *34 not do something. See Jackson v. City of Joliet , 715 F.2d 1200, 1203 (7th Cir.1983) ; see generally Scott R. Bauries, The Education Duty , 47 Wake Forest L. Rev. 705, 709 (2012) (discussing differences between positive and negative rights).
Although the supreme court has not explicitly identified the elements of a claim for violation of the Education Clause, we derive guidance from Cruz-Guzman and Skeen . In Cruz-Guzman , the supreme court suggested the viability of a civil claim asserting that the legislature had failed to meet its obligation to provide an adequate education. Cruz-Guzman , 916 N.W.2d at 11-12.[10] The plaintiffs in Cruz-Guzman attributed the inadequate education alleged in that case to certain causes but stressed to the supreme court that they were not asking the court to institute any particular remedy. See id. at 6 (noting that plaintiffs highlighted several practices alleged to contribute to inadequate education-boundaries of school districts, formation of segregated charter schools, failure to use desegregation funds for proper purpose, etc.), 9 (describing nature of claims and requests for relief). The supreme court relied on that feature of the claims in Cruz-Guzman to conclude that the claims only required the "judiciary to answer a yes or no question-whether the Legislature has violated its constitutional duty." Id. at 9. The court further reasoned: "If the Legislature's actions do not meet a baseline level, they will not provide an adequate education." Id. at 12.
In Skeen , the supreme court rejected a claim that the school-finance system violated the Education Clause because "plaintiffs [were] unable to establish that the basic system [was] inadequate." 505 N.W.2d at 312. The court emphasized the concession in that case that "all plaintiff districts met or exceeded the educational requirements of the state" and rejected the plaintiff-districts' attempts to rely on a relative-harm analysis. Id. at 302-03, 312. The court explained:
Any inequities which exist do not rise to the level of a constitutional violation of the state constitutional provisions which require the state to establish a "general and uniform system of public schools" which will secure a "thorough and efficient system of public schools," especially when the existing system continues to meet the basic educational needs of all districts.
Id. at 312.
Based on the supreme court's analyses in Cruz-Guzman and Skeen , and given the positive nature of the right created by the Education Clause, we conclude that, to establish a violation of the Education Clause, a plaintiff must demonstrate that the legislature has failed or is failing to provide an adequate education. Presumably, a number of variables influence whether education is adequate. Such variables might include the financing system challenged in Skeen , the numerous policies alleged to result in continued segregation in Cruz-Guzman , or the challenged statutes alleged in this case to result in the retention of ineffective teachers. When an Education Clause claim is based on one or more of these variables, a plaintiff needs to prove facts to establish that those variables are actually resulting in an inadequate education. In other words, a plaintiff cannot sustain a claim that the state is providing a constitutionally inadequate education without proving that the state is in fact *35 providing a constitutionally inadequate education.
In this case, appellants allege a different sort of claim. Although the amended complaint nominally alleges the deprivation of the right to a uniform and thorough education, appellants' theory of liability-as alleged in the amended complaint and more thoroughly outlined in briefing-is that the challenged statutes "impinge on" or "burden" their children's right to an adequate education. Appellants assert that they need not prove that the state has actually failed to provide an adequate education. More specifically, they assert that they need not allege that teaching is so ineffective as to render the education system constitutionally inadequate. Instead, they assert, they need only allege that effective teaching is essential to an adequate education and that their children run the risk of encountering ineffective teaching because of the challenged statutes.[11] We disagree.
Appellants' assertions in this regard seemingly attempt to import a concept of government interference that is applied in the context of negative constitutional rights. See, e.g. , In re Welfare of S.L.J. , 263 N.W.2d 412, 417 (Minn. 1978) (explaining that government power to regulate must not unduly infringe a protected freedom). They essentially ask this court to transform the right to a baseline level of education, recognized in Cruz-Guzman and Skeen , into a right to be free from any alleged government interference in obtaining an adequate education. This negative-rights analysis does not comport with the supreme court's characterization of the adequate-education right in Cruz-Guzman and Skeen , and appellants cite no other authority supporting the viability of such a claim. "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." Tereault v. Palmer , 413 N.W.2d 283, 286 (Minn. App. 1987), review denied (Minn. Dec. 18, 1987). Accordingly, in the absence of any authority supporting appellants' theory under the Education Clause, we conclude that appellants fail to state a claim upon which relief can be granted, and we affirm the district court's dismissal of appellants' Education Clause claims on the merits.
B. Equal Protection Clause
Like the United States Constitution, the Minnesota Constitution guarantees the equal protection of the laws. See U.S. Const. amend. XIV, § 1 ; Minn. Const. art. I, § 2. The threshold showing for an equal-protection claim is differential treatment of (at least) two groups of similarly situated people. See State v. Cox , 798 N.W.2d 517, 522 (Minn. 2011) ("[T]he Equal Protection Clause ... keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike.").[12] A necessary underlying *36 premise of this threshold requirement is that the groups must be objectively identifiable by some characteristic other than their alleged shared harm by the challenged government action. See, e.g. , Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc ., 682 F.3d 1293, 1297 (11th Cir.2012) ("Absent the existence of a discrete and identifiable group to which [the plaintiff] belonged and which the City treated in a discriminatory, prejudicial manner ... no valid equal protection claim exists in this case."); Wellwood v. Johnson , 172 F.3d 1007, 1010 (8th Cir.1999) (holding that viable equal-protection claim requires "independently identifiable class"); Nelson v. City of Irvine , 143 F.3d 1196, 1205 (9th Cir.1998) (noting "tautological" nature of equal-protection claim that identified class as those arbitrarily impacted by government conduct);[13] cf. Dean v. City of Winona , 843 N.W.2d 249, 259-60 (Minn. App. 2014) ("Appellants' real complaint is about the effect of an otherwise neutral ordinance on their particular circumstances, which does not give rise to an equal-protection claim."), review granted (Minn. May 20, 2014), and appeal dismissed , 868 N.W.2d 1 (Minn. 2015).
Appellants allege that the challenged statutes violate their equal-protection rights, but they have not identified a "discrete and identifiable group" that suffers differential treatment under the statute. See Corey Airport , 682 F.3d at 1297. Instead, they merely assert that some group of unidentified students are or will be taught by ineffective teachers because of the challenged statutes.[14]
The California Court of Appeal dismissed an equal-protection claim similar to appellants' in Vergara v. State of California , 246 Cal.App.4th 619, 209 Cal.Rptr.3d 532, 553-54 (2016), review denied (Cal. Aug. 22, 2016). Addressing the claim that an "unlucky subset" of students would be denied equal protection by being assigned to ineffective teachers, the California Court of Appeal concluded that "the unlucky subset is not an identifiable class of persons sufficient to maintain an equal protection challenge." Id. at 553. The court reasoned that, "[a]lthough a group need not be specifically identified in a statute to claim an equal protection violation, group members must have some pertinent common characteristic other than the fact that they are assertedly harmed by a statute." Id. (citations omitted). The court further explained:
The defining characteristic of the [unlucky subset], who are allegedly harmed *37 by being assigned to grossly ineffective teachers, is that they are assigned to grossly ineffective teachers. Such a circular premise is an insufficient basis for a proper equal protection claim. To avoid this circularity, a group must be identifiable by a shared trait other than the violation of a fundamental right.
Id. (citation omitted). The plaintiffs in Vergara asserted no such shared trait. Id.
We find Vergara persuasive. Defining a class only by reference to their alleged shared harm would result in "a kind of tautological equating of cause and effect." Corey Airport , 682 F.3d at 1298. Here, as in Vergara , appellants have failed to identify any shared trait that make them an independently identifiable group suffering differential treatment. Instead, they rely on the tautological "unlucky subset" analysis rightly rejected in Vergara. Accordingly, we affirm the district court's dismissal of appellants' equal-protection claims on the merits.[15]
IV. The district court did not abuse its discretion by dismissing appellants' amended complaint without affording them an opportunity to amend.
Appellants argue that the district court abused its discretion because it did not afford appellants an additional opportunity to amend their complaint. The district court has broad discretion in deciding whether to allow an amendment to the complaint, and its decision will not be reversed absent an abuse of discretion. St. James Capital Corp. v. Pallet Recycling Assocs. of N. Am., Inc. , 589 N.W.2d 511, 516 (Minn. App. 1999).
In their memorandum opposing respondents' motion to dismiss, appellants requested to amend their amended complaint if the district court dismissed their claims. Appellants never filed a motion to amend. In St. James Capital Corp. , the appellants did not formally move for leave to amend but instead requested to do so in their memorandum opposing respondents' motion to dismiss. Id. This court affirmed the district court's denial of the appellants' request, ruling that the appellants did not properly bring a motion for leave to amend before the district court. Id. Similarly, here, no motion for leave to amend was properly brought before the district court and, therefore, the matter was not properly argued to and was not considered by the district court. Because appellants did not properly bring a motion for leave to amend, the district court did not abuse its discretion when it did not address appellants' request to amend. See id.
DECISION
Appellants' claims are justiciable and appellants have standing, but the district court did not err by dismissing the claims for failure to state claims upon which relief may be granted or by not addressing appellants' informal request to amend.
Affirmed.

Minn. Stat. §§ 122A.40, subd. 8, and 122A.41, subd. 5, were amended in 2018 in ways that do not impact our analysis in this appeal. See 2018 Minn. Laws ch. 182, art. 1, §§ 20-21. Accordingly, we cite the current versions of the statutes. See Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs , 617 N.W.2d 566, 575 (Minn. 2000) (holding that appellate courts generally apply law as it exists at the time they rule on a case unless the change in law affects rights that were vested before the change).

Minn. Stat. §§ 122A.40, subds. 5, 7, 122A.41, subds. 2, 4.

"[P]rimarily" Minn. Stat. §§ 122A.40, subds. 7(a), 8(b)(2), 9, 13-17, 122A.41, subds. 5-10.

Minn. Stat. §§ 122A.40, subds. 10-11, 122A.41, subd. 14.

The amended complaint named then-Governor Mark Dayton and then-Commissioner Brenda Cassellius. On January 7, 2019, Governor Tim Walz and Commissioner Mary Cathryn Ricker were substituted as respondents. The amended complaint additionally named as defendants the four Minnesota school districts in which the appellants' children are or have been enrolled. The district court dismissed the claims against the districts, and appellants do not challenge on appeal the dismissal of those defendants.

The district court also did not address the briefed issues of whether the governor, MDE, and the commissioner of education are proper defendants to appellants' claims or whether declaratory judgment was precluded because not all interested parties were joined. Because we agree that the amended complaint fails to state a claim upon which relief can be granted, we also do not reach these issues. But see Cruz-Guzman , 916 N.W.2d at 13-15 (rejecting similar joinder argument).

The supreme court declined to adopt the United States Supreme Court's analysis in the seminal political-question case, Baker v. Carr , 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Cruz-Guzman , 916 N.W.2d at 8 n.4.

The supreme court also held justiciable the equal-protection claims in Cruz-Guzman that were based on racial segregation in schools. 916 N.W.2d at 10. Here, the district court dismissed appellants' equal-protection claims based on socioeconomic, racial, and ethnic discrimination, and appellants do not challenge that dismissal.

In addition to declaratory relief, appellants seek injunctive relief: the amended complaint asks the district court to enjoin enforcement and application of the challenged statutes and to enjoin the implementation of a substantially similar framework through future law, policy, or contract. Appellants' request for injunctive relief differs from that sought in Cruz-Guzman , which was generally to enjoin and remedy "violations of law." Cruz-Guzman , 916 N.W.2d at 6. Because we conclude that appellants' claims, while justiciable, are not viable on the merits, see section III below, we need not address any other challenges to the injunctive relief sought by appellants.

Although the merits were not before the supreme court in Cruz-Guzman , the supreme court addressed the nature of a viable Education Clause claim in its discussion of justiciability. See 916 N.W.2d at 11-12.

In their supplemental brief, appellants assert that, to prevail on their Education Clause claims, they need only "prove that effective teaching is part of the fundamental right to a baseline level, adequate education." The courts, they assert, need only answer "yes" or "no" to the question whether effective teaching is part of an adequate education; they need not "answer what quality of education is constitutionally required because [appellants] do not invoke a novel right to effective teaching." Thus, appellants argue that they need not establish what an adequate education requires with respect to teaching or whether the obligation to provide an adequate education has been met.

Our supreme court recently questioned the continued wisdom of requiring a similarly-situated analysis in cases where strict scrutiny is applied. See In re Welfare of Child of R.D.L. , 853 N.W.2d 127, 132 (Minn. 2014) ; see also Giovanna Shay, Similarly Situated , 18 Geo. Mason L. Rev. 581, 615 (2011) ("[W]hen properly understood and applied, 'similarly situated' is another way of stating the fundamental values of the Equal Protection Clause."). The issue in this case is more basic: appellants fail to enumerate any objectively identifiable groups to which we can apply equal-protection analysis.

Although the rational-basis test applied under the Minnesota Constitution sometimes differs from that applied under the United States Constitution, equal-protection analysis under both constitutions "begin[s] with the mandate that all similarly situated individuals shall be treated alike." Kolton v. County of Anoka , 645 N.W.2d 403, 411 (Minn. 2002) ; see also City of Golden Valley v. Wiebesick , 899 N.W.2d 152, 157 (Minn. 2017) ("We favor uniformity with the federal constitution because of the primacy of the federal constitution in matters affecting individual liberties and to encourage consistency in constitutional law in state and federal courts." (quotation omitted) ). Accordingly, we rely on federal caselaw in addressing the issue of the absence of objectively identifiable groups, which our own supreme court does not appear to have yet addressed. Cf. R.D.L. , 853 N.W.2d at 131-32 (addressing, where two identifiable groups of parents were present, an equal-protection claim alleging unequal statutory treatment with respect to fundamental right to parent).

As noted above, appellants have abandoned their Equal Protection claims based on socioeconomic, racial, and ethnic status.

Because this threshold requirement for an equal-protection claim is not met and is dispositive, we need not address the parties' other arguments regarding appellants' equal-protection claims.