[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 21-10318
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-00919-JPB

B.T.,
a minor, by and through his mother and
as next friend Wanda Jackson,

Plaintiff-Appellant,

versus

KEITH BATTLE,
individually,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 13, 2021)

Before JORDAN, GRANT, and BLACK, Circuit Judges.

PER CURIAM:

B.T., a minor, by and through his mother and next friend Wanda Jackson, appeals the district court's order: (1) denying his motion to compel discovery; (2) granting defendant Keith Battle's motion for summary judgment on his constitutional claims for excessive force and equal protection violations under 42 U.S.C. § 1983; and (3) granting Battle's motion for summary judgment on his claims for battery and punitive damages under Georgia state law. The claims stem from an incident during which Battle—a resource officer at B.T.'s high school—restrained B.T. using a "leg sweep takedown."

On appeal, B.T. argues the district court erred in denying his motion to compel discovery from non-party Fulton County School System (FCSS) in support of his equal protection claim. He also argues Battle was not entitled to qualified immunity on either of his constitutional claims, and that he did not abandon his excessive force claim. B.T. further contends Battle was not entitled to official immunity on the battery claim. After review, we affirm.

## I. BACKGROUND

We draw the following facts from the evidence presented at summary judgment. On March 18, 2015, B.T.—a then 14-year-old, African American student at Tri-Cities High School in Fulton County, Georgia—initiated a fight with

2

another student.  B.T. had previously threatened on social media to shoot the other student.  The fight was broken up, and B.T. was suspended for one day.

A school administrator took B.T. to the office of Clifton Spears, another school administrator.  Spears contacted B.T.'s mother and told B.T. to wait in the office until he could be taken to another area and then wait to be picked up by his mother.  B.T, who typically walked home from school, left the office without permission and refused to return when instructed to do so.  B.T. threatened to hit Spears because he was mad and, according to B.T., because Spears called him an insulting name.  B.T. walked down the hall and out of the building as Spears followed.  Once outside, B.T. attempted to hit Spears.  As B.T. swung, Spears grabbed B.T.'s arm, put B.T.'s hands behind his back, and pinned B.T. to a car face down.

At this point, Battle—a school resource officer who is also African American—was notified Spears needed assistance.  Battle testified that B.T. was cursing, and both Battle and Spears represented that B.T. was repeatedly banging his head against the car.  But B.T. stated in an affidavit he was instead trying only to raise his head up from off of the car.  Battle told B.T. to calm down, handcuffed B.T. behind his back, and escorted him back into the "K Hall" corridor of the school.  At the time, Battle weighed 218 pounds, while B.T. weighed 118 pounds.

3

Inside the school, Battle attempted to unlock his office door while holding onto B.T. The only eyewitnesses to what happened in the next moments are B.T., Battle, and Lavonna Taylor, a communities in schools site coordinator. At his deposition, B.T. testified that he told Battle he was squeezing his right arm too hard and jerked away. Then, without losing contact with B.T.'s arm, Battle grabbed onto B.T.'s shirt and slammed him to the floor. B.T. hit the ground chest first and had to catch his breath. B.T. further testified that he believed Battle did not intend to hurt him and that Battle thought he was attempting to run because he had jerked away. B.T. later stated in a declaration that he was not trying to run, but he wanted Battle to loosen his grip. He also stated it was "common sense" that Battle was trying to hurt him because, "people slam people[] to hurt them," and Battle "had to know he would hurt [him]."

According to Battle, B.T. was belligerent and swearing as he took him to his office. As Battle attempted to get out his key to the office, B.T. jerked away. Battle stated that he then "had to make a split second decision to stop [B.T.] from fleeing." Battle grabbed B.T.'s shirt with both hands and used a "leg sweep takedown" to restrain B.T. This involved sticking his leg out to trip B.T. in order to prevent him from fleeing, causing B.T.'s feet to leave the ground.

Taylor stated that it looked like B.T. was crying and that his nose was bleeding as he and Battle approached the office door. She could hear B.T.

4

breathing heavily and heard Battle tell B.T. to be still. Battle had one hand on B.T. while he attempted to open the door. A second later, B.T. "jerked" or "snatched" away from Battle with his whole body in a "big motion." She then saw Battle grab B.T. by his clothes and cause B.T.'s feet to leave the ground, "almost like a wrestling move." Taylor described Battle's action as a "slam" and recalled seeing B.T.'s body "bounce" from the floor. Taylor stated that she was startled by the incident.

There is also a recording of the incident taken from the K Hall security camera. The video is of poor quality, and Battle and B.T. can only be seen at a distance at the far end of the hall. Battle is leading B.T. down the side of the hall, and within an instant, just outside the office door, Battle appears bent at the waist and B.T. is on the floor. According to the officer who reviewed the footage for Fulton County Schools Police Department (FCSPD) as part of its internal investigation: "B.T. appears to snatch his body in a very quick movement away from Officer Battle and away from the office door." He further explained: "It appears that as B.T. pulls away, Officer Battle takes B.T. to the floor with what appears to [be] a fluid twist of his own body from the hips in a less overt motion."

Battle opened the office door, grabbed B.T. by his left arm, and got B.T. inside the office. Battle testified that B.T. was outraged and was cursing and banging his head against the wall, but B.T. disputes having ever banged his head

5

during the incident.  Battle called the school nurse to administer aid and told her B.T. was "bleeding from the head."  In examining B.T., the nurse determined something might be wrong with B.T.'s left arm, and Battle uncuffed B.T.  Emergency medical personnel were called in, and they placed B.T.'s arm in a sling.  B.T.'s mother later reported that B.T.'s left arm had been broken as a result of the incident.

FCSPD conducted an internal investigation of the incident and cleared Battle of any wrongdoing, as did public safety investigators for FCSS.  The Fulton County District Attorney declined to move forward with a complaint filed by B.T.'s mother.  B.T., in turn, was not charged with any crime in relation to the incident.

An "arrest detail report" for Battle shows that during his tenure as a school resource officer from 2012 until 2017, he arrested 31 students.  Of those 31 students, 30 were Black.  At the time of the incident in March of 2015, the student population at Tri-Cities High School was majority African American.  At deposition, B.T. testified that he did not remember seeing White or Asian students engaged in serious incidents at his school, had no personal knowledge of non-African American students engaging in conduct similar to his, and had no knowledge of what Battle had seen other students do.  B.T.'s mother testified she was not aware of any written FCSS policies that would encourage discrimination

against African American students.  Battle, who is African American, denied having discriminated against B.T. based on B.T.'s race and testified that, during his employment with FCSS, he did not witness students of other races engaging in behavior similar to B.T.'s.

Wanda Jackson is B.T.'s mother and next friend who is also a licensed attorney serving as B.T.'s counsel.  B.T. filed suit in Georgia state court asserting claims against Battle and other school officials in their individual and official capacities, and the case was removed to federal court.  On Defendants' motion, the district court dismissed all but certain individual-capacity claims against Battle, in which B.T. alleged violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and state-law claims for battery and punitive damages.  Relevant to his constitutional claims, B.T. alleged that Battle: (1) violated his right to be free from excessive force by tightening his handcuffs, slamming him to the floor, breaking his arm, and picking him up by his broken arm, and (2) violated his right to equal protection by treating him differently than Caucasian, Hispanic, and Asian students that Battle had witnessed engaging in "identical or virtually identical behavior."

B.T. moved to compel non-party FCSS to produce certain documents, and Battle moved for summary judgment.  After a hearing on the motions, the district court entered a thorough and well-reasoned order granting Battle's motion for

7

summary judgment and denying B.T.'s motion to compel. The court concluded B.T. had abandoned his excessive force claim by failing to substantively respond to Battle's qualified immunity defense on this claim. The court also concluded Battle was entitled to qualified immunity on the equal protection claim and to official immunity on the battery claim, and that B.T. was not entitled to punitive damages. As to the discovery motion, the court concluded the information B.T. requested from FCSS was neither relevant to his individual-capacity claims against Battle nor proportional to the needs of the case. This appeal followed.

## II. DISCUSSION

### A. Motion to Compel

B.T. first contends the district court abused its discretion in denying his motion to compel FCSS to produce the following documents: "All records evidencing the race of all students who received out of school suspensions at Tri-Cities High School [from] January 1, 2010 until March 18, 2015." B.T. argues this information is relevant to his equal protection claim because it concerns students who are similarly situated to him, in that the incident in this case arose from the imposition of an out-of-school suspension.[1]

---

[1] Though B.T. also requested other information, he only challenges the district court's denial of the motion as to this particular request.

8

Federal Rule of Civil Procedure 26(b)(1) allows for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance in this context "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Proportionality considerations include: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Both parties characterize B.T.'s equal protection claim as one for selective enforcement. The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). Selective enforcement claims are governed by "ordinary equal protection standards," and require a showing of both discriminatory effect and discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (analyzing selective prosecution). To make this showing, B.T. must demonstrate that Battle treated similarly situated persons

disparately and produce evidence that Battle's actions "were motivated by race." *See Draper v. Reynolds*, 369 F.3d 1270, 1278 n.14 (11th Cir. 2004).

The district court did not abuse its discretion in denying B.T.'s motion to compel discovery from FCSS because the information B.T. sought was not relevant or proportional with respect to his equal protection claim.[2]  When B.T. moved to compel, the only equal protection claim remaining was the claim against Battle in his individual capacity.  The gravamen of this claim is that Battle detained, handcuffed, arrested, and injured B.T. because B.T. is African American, and that he did not treat Caucasian, Hispanic, and Asian students in the same manner, even though he had witnessed them engaging in "identical or virtually identical behavior."

The information B.T. requested—records evidencing the race of all Tri-Cities students who were suspended over a five-year period for varying types of misconduct, regardless of whether Battle knew of such misconduct—sweeps too broadly.  A similarly situated student, for purposes of B.T.'s equal protection claim against Battle individually, is not one who received a suspension.  Instead, a similarly situated student is one that Battle witnessed engaging in behavior

---

[2] We review the district court's denial of a discovery motion for an abuse of discretion. *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003).  "A district court abuses its discretion in limiting discovery when it makes a clear error of judgment or applies an incorrect legal standard." *Akridge*, 1 F.4th at 1276 (quotation marks omitted).

"identical or virtually identical" to B.T.'s, but that Battle declined to arrest or otherwise discipline.  B.T. has failed to demonstrate how records of all students who were suspended bears on his claim that Battle declined to arrest students who had engaged in the same behavior that he did.  Further, the request seeks records from as early as 2010, even though Battle began working for FCSPD in 2012.  It was within the district court's discretion to conclude that the burden of such discovery against non-party FCSS, compared to the minimal relevance of the information sought, weighed against its allowance.

## B.  Qualified Immunity as to Constitutional Claims

B.T. next argues that Battle is not entitled to qualified immunity on his Fourth Amendment excessive force claim or his Fourteenth Amendment equal protection claim.[3]  B.T. also contends the district court erred in concluding he abandoned his excessive force claim.

"Qualified immunity shields government officials from liability for civil damages for torts committed while performing discretionary duties unless their conduct violates a clearly established statutory or constitutional right."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  To be eligible for qualified

---

[3] Though B.T., for the first time on appeal, refers to his claim as one for excessive force under the Fourteenth Amendment, his complaint refers to a violation of his right to be free from "excessive force upon and an unreasonable seizure of his person, as guaranteed under the Fourth Amendment."  Like the district court, we view B.T.'s excessive force claim as arising under the Fourth Amendment.

11

immunity, a government official must first establish he was acting within the scope of his discretionary authority when the alleged wrongful conduct occurred. *Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019). There is no dispute that Battle was acting within the scope of his discretionary authority when he arrested and restrained B.T. The burden therefore shifted to B.T. to show: (1) Battle violated his constitutional rights, and (2) those rights were clearly established at the time of the alleged misconduct. *See id.* We may address the two prongs of the analysis in either order. *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019).

### 1. Excessive Force

B.T. argues he did not abandon his excessive force claim because he addressed the claim during oral argument before the district court. On the merits, he contends Battle's use of force was objectively unreasonable and that his right to be free from excessive force was clearly established because he was no longer resisting.

We start with the district court's conclusion that B.T. abandoned his excessive force claim by failing to substantively respond to Battle's qualified immunity defense regarding this claim. To overcome the qualified immunity defense set forth in Battle's motion for summary judgment, it was B.T.'s burden to show Battle violated his constitutional right to be free from excessive force, and

12

that this right was clearly established. *See Hunter*, 941 F.3d at 1278. B.T.'s response brief in opposition to summary judgment contained no argument on the excessive force claim. Instead, the claim was mentioned only in a heading, with the argument focusing instead on whether B.T. had established an equal protection violation and whether Battle was entitled to official immunity on the battery claim. At oral argument in the district court, B.T. asserted he had not abandoned the excessive force claim and argued, for the first time that under "the balancing act, which the case law talks about," Battle's use of force was not appropriate because he was already restrained. B.T. did not identify the case law supporting this statement.

The district court did not err in concluding B.T. abandoned the excessive force claim. B.T.'s failure to address the claim at all in his response brief other than in a heading shows abandonment. *See Mesa Air Group, Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1130 n.7 (11th Cir. 2009) (explaining an argument not made in a party's brief but raised at oral argument is considered waived). Moreover, his presentation during oral argument—by his mother and next friend, who is a licensed attorney and his counsel—did not meaningfully address Battle's qualified immunity defense, instead relying on unspecified case law to perform a "balancing act." It was not error for the court to conclude the claim was abandoned where B.T. raised it in a perfunctory manner without any supporting

13

authorities.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014); *see also Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (stating "the onus is upon the parties to formulate arguments," and there is "no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment").

2.  Equal Protection

B.T. argues the district court erred in finding Battle was entitled to qualified immunity on his equal protection claim because he demonstrated, through circumstantial and statistical evidence, that Battle acted with discriminatory intent.

We conclude, however, that B.T. has failed to demonstrate a violation of his Fourteenth Amendment rights because he has not shown Battle's actions had a discriminatory effect or were undertaken with a discriminatory purpose.  *See Armstrong*, 517 U.S. at 465 (stating under ordinary equal protection standards, a plaintiff must demonstrate both discriminatory effect and discriminatory purpose). First, there is no evidence that students of other races engaged in conduct similar to B.T.'s, but Battle declined to arrest or otherwise discipline them.  To the contrary, B.T. testified he had no knowledge of other students of different races who took the same actions that he did, and Battle testified he had not witnessed students of other races engaging in conduct similar to B.T.'s.  Further, the arrest detail report showing that, from 2012 to 2017, 30 of the 31 students Battle arrested were Black,

14

says nothing about whether other students engaged in conduct similar to B.T.'s but were not arrested. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 1000 (11th Cir. 1995) ("Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement.").

Second, the record does not reflect that Battle acted with a discriminatory purpose, such that he restrained B.T. "at least in part 'because of,' not merely 'in spite of,'" his race. *See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1297 (11th Cir. 2012) (quoting *Pers. Adm'r. of Mass. v. Feeney*, 442 U.S. 256 (1979)). According to B.T., Battle never said anything to make him believe Battle treated him differently because of his race, and Battle averred that race was not a motivating factor during his interaction with B.T.

B.T. contends Battle's discriminatory intent can be inferred from the arrest detail report because it is "disingenuous to believe" Battle had not also observed students of other races being restrained by school personnel. Such speculation, however, does not support a reasonable inference that Battle arrested B.T. because of his race. B.T. also points out that on his job application, Battle indicated he did not wish to work at Tri-Cities High School, which has a majority African American student population, but this too is purely speculative evidence of a discriminatory motive or intent. On this record, the district court did not err in

15

concluding Battle was entitled to qualified immunity on B.T.'s equal protection claim.

## C. Official Immunity as to Battery Claim

With respect to his state-law claim for battery, B.T. argues Battle was not entitled to official immunity because he acted with actual malice or intent to injure B.T. Battle's use of force was so excessive, B.T. argues, as to demonstrate deliberate intent to do wrong.

A cause of action for battery will lie for any unlawful "touching of the plaintiff's person, even if minimal, which is offensive." *Lawson v. Bloodsworth*, 722 S.E.2d 358, 359 (Ga. Ct. App. 2012). However, under the Georgia Constitution, "state officials are entitled to official immunity for their discretionary actions unless they acted with 'actual malice' or an 'actual intent to cause injury.'" *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016) (quoting Ga. Const. art. I, § 2, ¶ IX(d)). In the context of official immunity, actual malice means a "deliberate intention to do wrong," while "actual intent to cause injury" requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011) (quotation marks omitted). Although actual malice may be inferred based upon an officer's conduct, unreasonable or even recklessly illegal

conduct, without more, does not support such an inference. *Black*, 811 F.3d at 1266.

The district court did not err in concluding Battle was entitled to official immunity on the battery claim. B.T. has not identified any evidence in the record that would support an inference Battle acted with a deliberate intention to do wrong or harm him. B.T. initially testified he did not believe Battle intended to break his arm or hurt him when he performed the leg sweep, though he later stated it was common sense that "people slam people[] to hurt them." But even if Battle unreasonably "slammed" B.T. to the floor, such conduct, on its own, does not support an inference that Battle intended to do wrong, as opposed to restraining a suspect who was resisting and who he reasonably believed was attempting to get away. *See id.*; *see also Tittle v. Corso*, 569 S.E.2d 873, 877 (Ga. Ct. App. 2002) (officer's act of "slamming" a plaintiff to the hood of a car was insufficient to show the officer's use of force "was so excessive or unnecessary as to demonstrate a deliberate intent to do wrong"); *Taylor v. Waldo*, 709 S.E.2d 278, 282 (Ga. Ct. App. 2011) (evidence that officer "unnecessarily threw [plaintiff] to the ground and handcuffed him roughly" was insufficient to show the officer's use of force "was so excessive or unnecessary as to demonstrate a deliberate intent to do wrong").

17

B.T. asserts Battle's conduct evinces a deliberate intent to do wrong because leg sweep takedowns were not authorized by the FCSPD. But the portion of Battle's testimony B.T. relies on does not indicate leg sweeps were prohibited under all circumstances. Further, FCSPD determined in the course of its internal affairs investigation of the incident that Battle had not violated any FCSS or FCSPD policies. And, the officer who conducted the investigation stated in his declaration that he had received an opinion from a certified instructor in Georgia peace officer training that Battle's technique was "an acceptable practice" for taking down a suspect who "continues to be physically resistive and/or is attempting escape after being taken into custody."

Battle's conduct, on its own, is not evidence of actual malice or intent to injure, and B.T. has not identified any other evidence sufficient to overcome Battle's official immunity defense. The district court therefore did not err in granting Battle's motion for summary judgment as to the battery claim.[4]

## III.  CONCLUSION

For the reasons set forth above, we affirm the district court's order denying B.T.'s motion to compel discovery and granting Battle's motion for summary judgment.

---

[4] Having concluded none of B.T.'s claims survive summary judgment, we also affirm the portion of the district court's order granting summary judgment in favor of Battle on B.T.'s claim for punitive damages.

**AFFIRMED.**